| | |
|---|---|
| ATM SHAFIQUL KHALID,<br><br>Plaintiff,<br><br>v.<br><br>SONY INTERACTIVE ENTERTAINMENT INC. and<br>SONY INTERACTIVE ENTERTAINMENT LLC,<br><br>Defendants. | Case No. 2:26-cv-04361-TL<br><br>COMPLAINT FOR PATENT INFRINGEMENT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff ATM Shafiqul Khalid ("Khalid") alleges against Sony Interactive Entertainment Inc. ("SIE Inc.") and Sony Interactive Entertainment LLC ("SIE LLC") (collectively, "Sony" or "Defendants") as follows:

1. This is an action for infringement of United States Patent Nos. 8,782,637 (the "'637 Patent") and 10,846,118 (the "'118 Patent") under the Patent Act, including 35 U.S.C. § 271.
2. Plaintiff alleges a residential host architecture in which the PlayStation console executes the relevant environment while communicating with Sony backend services for account, subscription, entitlement, licensing, provisioning, configuration, authentication, system software, updates, servicing, or related lifecycle functions.

3. The ’118 Patent additionally recites an emulator operating in the claimed virtual-machine environment. Plaintiff’s theory requires the emulator-in-VM relationship.
4. Factory installation/provisioning followed by ordinary Sony-directed activation, subscription, provider configuration, content access, lifecycle servicing, and local/remote use is Plaintiff’s primary ecosystem-wide theory. Sony’s published full system-software reinstallation and factory reset process is pleaded as a narrower, independently observable validation path because Sony’s complete factory and internal provisioning mechanisms are not public.
5. Plaintiff Khalid is an inventor of the Asserted Patents and participated in the pre-filing technical investigation.

## THE PARTIES

6. Plaintiff ATM Shafiqul Khalid is an individual residing in Washington and is the named inventor of the Asserted Patents that he developed while serving as CTO for Xencare Software, Inc.
7. Khalid is the inventor and owner of the Asserted Patents and possesses the substantial rights necessary to bring the causes of action pleaded herein, including the right to sue for infringement and recover damages for the periods alleged. Exhibits A and B identify Khalid as the named inventor of the respective Asserted Patents. Recorded assignments and applicable agreements further establish Khalid’s ownership and enforcement rights, including the right to pursue accrued infringement claims.
8. Defendant Sony Interactive Entertainment LLC is a United States limited liability company headquartered in San Mateo, California. SIE LLC conducts PlayStation-related business in the United States, including hardware, software, network services, content, distribution, marketing, support, and game-development operations.
9. Defendant Sony Interactive Entertainment Inc. (“SIE Inc.”) is a Japanese corporation headquartered in Tokyo, Japan. PlayStation consoles and devices, including the PlayStation 5

("PS5"), bear markings identifying SIE Inc., which is also the identified licensor under the PS5 System Software License Agreement applicable to U.S. users.

10. Upon information and belief, SIE Inc. develops and licenses PS5 hardware and system software, while SIE LLC participates in U.S. commercialization, distribution, and PlayStation services. The Defendants coordinate aspects of the Accused PlayStation Systems, including PS5 system software, PlayStation Network ("PSN") services, Remote Play functionality, and compatible PlayStation Portal devices. Plaintiff alleges infringement against each Defendant only for acts performed by, or legally attributable to, that Defendant.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271.

12. This Court has specific personal jurisdiction over SIE LLC based on its alleged Washington activities relating to accused PlayStation products and services, including domestic commercialization and the Bellevue operations described below. Plaintiff alleges that these contacts relate to the asserted claims.

13. This Court has specific personal jurisdiction over SIE Inc. based on its alleged purposeful direction of PS5 products and licensed system software toward the Washington market, including accused products sold and used in this District. SIE Inc. is identified in PS5 hardware markings and the U.S. PS5 System Software License Agreement. Plaintiff alleges that these forum-directed activities relate to the asserted claims.

14. Venue is proper as to SIE Inc., a Japanese corporation, under 28 U.S.C. § 1391(c)(3). Its foreign status does not dispense with the separate requirement of personal jurisdiction.

15. Upon information and belief, venue is proper as to SIE LLC under 28 U.S.C. § 1400(b) because SIE LLC has committed acts of infringement in this District and maintains its own regular and

established place of business here. Plaintiff relies on SIE LLC-specific employment, federal labor-certification, workplace-management, and commercial records, not merely the presence of its subsidiaries.

16. Bellevue Operations and Workforce Notices: On October 29, 2024, SIE LLC notified Washington State authorities of the permanent closure of Firewalk Studios in Bellevue, Washington, affecting approximately 174 employees. In contrast, in a June 25, 2026 WARN notice signed by its Director of Employment Legal, SIE LLC identified "Sony Interactive Entertainment, LLC and its subsidiary, Bungie, Inc." as conducting a reduction in force affecting approximately 292 employees at 550 106th Avenue NE, Suite 108, Bellevue, Washington 98004-5084. Unlike the 2024 notice, the 2026 notice did not announce a facility closure and expressly stated that the action was not expected to involve relocation or contracting out of company operations or affected positions. In a separate corporate statement issued the same day, Sony distinguished reductions affecting Bungie personnel from those affecting SIE teams supporting Bungie operations. These contemporaneous statements identify SIE LLC's involvement in employment-related operations at the Bellevue workplace and distinguish the 2026 workforce reduction from a facility closure. Accordingly, Plaintiff alleges, on information and belief, that SIE LLC-associated business operations continued in Bellevue near the commencement of this action, approximately four months after the June 2026 WARN notice.

17. Federal labor records provide additional entity-specific evidence of SIE LLC's Bellevue operations. An April 23, 2026, Labor Condition Application (LCA), Case No. I-200-26113-825316, identifies Sony Interactive Entertainment LLC as the employer and Bellevue, Washington, as the worksite for a Senior Site Reliability Engineer position, with an employment period from October 1, 2026, through September 30, 2029. The U.S. Department of Labor certified the application. Public labor-record compilations further identify 13 H-1B Labor

Condition Application (LCA) cases and 17 prevailing-wage determination (PWD) cases associated with SIE LLC in Bellevue, Washington.

18. In March 2026, Sony Interactive Entertainment advertised an on-site Bellevue-area Senior Engineer & Workplace Manager position responsible for overseeing “all SIE’s leased spaces in the area,” including office facilities and workplace services. Sony's official PlayStation Studios website, bearing a Sony Interactive Entertainment LLC copyright notice, identifies teamLFG as “headquartered in Bellevue, WA,” with personnel working both on-site and remotely. A separate recruitment announcement identified an on-site Senior Build Engineer position at a studio near Seattle. Additionally, an October 2026 search identified approximately 167 Seattle-area professional profiles listing Sony Interactive Entertainment as their current employer, including engineering, information technology, product, and senior management personnel. Plaintiff alleges that these records collectively provide evidence of Sony's continuing physical facilities, workforce, and technical operations in the Seattle metropolitan area, including Bellevue.

19. Plaintiff’s pre-filing investigation documented a PS5 and PlayStation Portal retail transaction in Redmond, Washington, with product packaging identifying SIE LLC. Upon information and belief, SIE LLC has participated in the sale and distribution of PS5 consoles in Washington. Upon information and belief, SIE LLC participates in in-District offers for sale, sales, distribution, servicing, and operation of accused PS5/PSN/Remote Play combinations, and its Washington personnel test, configure, demonstrate, or use accused systems and services.

## THE ASSERTED PATENTS AND INTRINSIC-RECORD CONTEXT

20. The ’637 Patent, titled “Mini-Cloud System for Enabling User Subscription to Cloud Service in Residential Environment,” issued July 15, 2014. A copy is attached as Exhibit A.

21. The ’118 Patent, titled “Mini-Cloud System with Emulator for Enabling User Subscription to Cloud Service,” issued November 24, 2020. A copy is attached as Exhibit B.

22. The Asserted Patents concern an integrated residential mini-cloud architecture involving a persistent residential host infrastructure, virtualized execution environment, terminal access, backend services, and subscription-based lifecycle functionality. The asserted architecture is not merely a system for distributing or downloading a purpose-specific virtual-machine appliance to a subscriber computer for local execution. Rather, Plaintiff alleges a residential virtualized host infrastructure through which subscribed environments, content, and services are provisioned, configured, maintained, and accessed through the claimed terminal relationships. The ’118 Patent adds, among other limitations, an emulator operating in the claimed virtual machine.

23. For Claim 1 of the ’637 Patent, Plaintiff construes the recited creation, provisioning, configuration, and subscription-process language according to its plain and ordinary meaning in light of the intrinsic record. Plaintiff does not read into the claim an unstated restriction that creation, provisioning, or configuration occur only during original manufacture, only during first enrollment, in one uninterrupted session, or within a particular temporal interval, while preserving the ordering and relationships actually required by the claim language.

24. The specification describes provisioning, deployment, upgrading, servicing, licensing, subscription management, and lifecycle management; contemplates templates or preconfigured VM images; and describes configuration and VM/resource changes after infrastructure is operational. Plaintiff therefore alleges infringement based on the accused system’s operational lifecycle, not on a requirement that every claimed function occur at the factory or at the subscriber’s first sign-on.

25. The terminal-access limitations likewise should not be restricted to a historical implementation of RDP, VNC, or a preferred port-extension embodiment. Plaintiff alleges that later-developed or adapted protocols may satisfy the issued functional and relational limitations where they implement the claimed local/direct and network/remote access relationships through the residential mini-cloud.

## FACTUAL BASIS FOR SONY'S INFRINGEMENT

26. Sony makes, imports, sells, offers, supports, and operates PS5 consoles and related PlayStation services for residential use. Those consoles communicate with Sony-controlled network services for accounts, subscriptions, licenses and entitlements, system software, content, security, updates, servicing, and related functions.

27. Sony provides Remote Play functionality under which the residential PS5 remains the host while a user accesses and controls it from a separate supported terminal, including PlayStation Portal, another supported console, PC/Mac, phone, or tablet.

28. Sony supports use of the residential console through local, direct audiovisual output to a connected television and supports Remote Play from another room or away from home through network connectivity. Plaintiff alleges that these modes implement the claimed two-tier topology around the same residential execution environment; the backend-cloud connection supplies additional Sony services and need not execute the game itself.

29. Public PS5 technical materials, including independent reverse-engineering research, describe Sony's PS5 hypervisor or virtual-machine monitor, a guest/GameOS execution environment, virtual-processor control structures including vCPU/VMCB mechanisms, nested-page-table/SLAT memory virtualization, hypercalls/VMMCALL behavior, VM exits, and boot-time construction of nested page tables. Plaintiff relies on this evidence for a hypervisor-managed guest environment on PS5.

30. Sony's PSN and PlayStation Plus infrastructure authenticates accounts and subscriptions, applies licenses and entitlements, supplies cloud-save and transfer functionality, and provides system-software, security, update, configuration, content-access, Remote Play, and related lifecycle information to PlayStation consoles.

31. **Sony-Controlled Installation and Provisioning:** Upon information and belief, Sony establishes the accused PS5 software environment through factory installation, provisioning, and first-boot or

activation processes. Sony thereafter supplies and manages system software, account and subscription infrastructure, licensing and security policies, updates, Remote Play functionality, and related provider-side services used to configure and operate that environment. Sony's publicly documented initial-setup and recovery procedures provide observable examples of this lifecycle, while the precise factory images, virtualized-environment instantiation mechanisms, provisioning records, framework components, and allocation of functions among Sony systems are principally within Defendants' possession.

32. **PS5 System-Software Reinstallation and Recovery:** Sony's official PS5 support materials distinguish ordinary maintenance and reset operations from safe mode full system-software reinstallation. Restore Default Settings restores default settings without deleting installed games, applications, or saved data; Clear Cache and Rebuild Database performs system maintenance; and Reset PS5 deletes user data and restores the console to its original state. By contrast, Reset PS5 (Reinstall System Software) deletes user data, removes existing PS5 system software, and reinstalls that software using Sony's separately supplied recovery package, PS5UPDATE.PUP, through external USB storage. Following reinstallation, the console boots into a newly installed, operative PS5 environment. Sony separately documents analogous PS4 reinstallation and hard-disk-replacement procedures, which Plaintiff identifies as contextual evidence rather than substitutes for PS5-specific technical proof.

33. **Virtual-Machine Creation and Recreation:** Public technical documentation identifies firmware components and system-software partition images associated with PS5 installation, including kernel-related components and the `ssd0.system_b` and `ssd0.system_ex_b` images. The documented full-reinstallation process provides an observable reconstruction mechanism in which the prior operating environment is replaced through installation of Sony-supplied system software. Considered together with independently documented PS5 hypervisor and guest operating-system architecture, including boot-time initialization of virtualization state, Plaintiff

alleges, on information and belief, that Sony's installation, provisioning, and boot lifecycle creates or recreates an operative virtual-machine execution environment. This reconstruction mechanism is consistent with the ’637 Patent's disclosure of creating or recreating virtual machines using previously prepared images and associated stored information.

34. **Post-Installation Configuration and Operation:** Following factory installation, initial setup, or subsequent reinstallation, Sony's PS5 lifecycle includes bootstrapping and host configuration, including initial system-language, localization, regional, keyboard, and other operating preferences. The lifecycle further includes update selection, PlayStation Network account sign-on, account-region and subscription-entitlement application or restoration, Console Sharing and Offline Play configuration, licensing, security servicing, content access, cloud-save recovery, and device or account migration. These configuration operations establish and personalize the operative PS5 environment for the particular host and user account and may be modified or restored through subsequent system and network interactions. Plaintiff alleges, on information and belief, that Sony's coordinated console-side and provider-side operations implement the host-provisioning, configuration, and subscription-management functions recited in the asserted claims. The precise internal communications, configuration objects, framework components, and resulting state transitions are principally within Defendants' possession.

35. **Account-Linked Subscription and Cross-Console Configuration:** Sony's publicly documented support materials establish that PlayStation Network accounts and associated subscription entitlements can be accessed following sign-in on a new or replacement PS5 console. Sony further provides mechanisms for restoring PlayStation Plus cloud-saved game data and transferring supported user data, settings, and content between consoles. These operations demonstrate that the PS5 environment is configured through coordinated interactions between the residential console and Sony's account, subscription, and network services, allowing account-linked entitlements and supported user data to be applied or restored on a particular host device.

Plaintiff alleges, on information and belief, that these coordinated client-server operations form part of Sony's host-provisioning, configuration, and subscription-management architecture.

36. Once the authorized environment is operative, Remote Play permits a separate terminal to connect to and control the execution environment on the residential PlayStation host. Sony's PlayStation Portal is a purpose-built Remote Play terminal with an integrated display, wireless networking, physical controls, touchscreen/touchpad functionality, and hardware I/O. Plaintiff alleges that Remote Play/Portal reaches the provisioned virtual-machine environment required by the asserted claims and supplies additional dependent-claim embodiments identified below.

37. Sony distributes and supports legacy PlayStation/Classics content on PS5. Public technical materials identify a PS5-specific PS2-emulation path and identify Sly Cooper and the Thievius Raccoonus as a concrete PS2 title locally executed on PS5 through Sony's PS2-emulation implementation. Publicly observable emulator-oriented features include rewind, quick save/save-state functionality, display filters, and related wrapper behavior.

38. Public evidence independently identifies the PS5 hypervisor-managed GameOS/guest environment and the PS5-specific PS2 emulator/title path. Plaintiff therefore alleges, on information and belief where runtime placement is nonpublic, that Sony's PS2 emulator used for at least one accused locally executed Classics title operates within the qualifying GameOS virtual-machine environment. The claim theory is emulator-in-VM; it does not require a second VM, nested virtualization, or a mandatory Type-1-plus-Type-2 stack. Sony's process hierarchy, loader records, package structure, and runtime configuration can confirm the precise placement.

39. Sony itself tests, configures, demonstrates, operates, uses, imports, sells, and/or offers accused PlayStation hardware and services in the United States. Sony also supplies the firmware, account infrastructure, subscription services, Remote Play software, emulator functionality, instructions, and technical support used to operate the accused combinations.

## PRE-FILING INVESTIGATION

40. Plaintiff conducted a pre-filing investigation involving physical examination and testing of PlayStation 5 (PS5) consoles and PlayStation Portal devices, including factory-reset procedures, account and subscription functionality, product markings, and related operational behavior. Plaintiff also reviewed Sony's publicly available technical documentation, support materials, and independent technical research concerning the accused PlayStation systems.

41. Plaintiff's investigation informed the preliminary limitation-by-limitation infringement analysis. Representative findings and supporting materials are identified in the Preliminary Infringement Claim Chart (Exhibit C) and Public Evidence Index (Exhibit D). Certain internal implementation details, including Sony's virtual-machine provisioning mechanisms, remain within Defendants' possession and are expected to be addressed through discovery.

## SIE INC.'S CONTRACTUAL AND TECHNICAL CONTROL OVER THE ACCUSED PS5 SYSTEM SOFTWARE

42. Sony's U.S. PS5 System Software License Agreement identifies SIE Inc. as the software licensor and governs authorized PS5 system-software use and updates. This contractual relationship is relevant to SIE Inc.'s alleged role in the accused software environment, independently of which entity sold a console. Source: https://www.playstation.com/en-us/legal/ps5-ssla.

43. Sony's PS5 safety documentation states that the console was manufactured "by or on behalf of Sony Interactive Entertainment Inc." and identifies SIE Inc. in Tokyo. Plaintiff's investigation also found SIE Inc. markings on PS5 and related devices sold in the United States. These facts identify SIE Inc.'s connection to the hardware.

44. Upon information and belief, the PS5 hypervisor and related components operate within the licensed firmware/system-software environment.

45. The PS5 System Software License Agreement reserves to SIE Inc. rights concerning licensed system software, updates, and enforcement, including the authority to disable PS5 operation and terminate access to PlayStation services under specified circumstances. These contractual rights support SIE Inc.'s alleged participation in authorizing and controlling aspects of PS5 system-software operation.

46. Sony publishes prescribed PS5 system-software recovery and reinstallation procedures and provides authorized system-software files for those procedures. Upon information and belief, SIE Inc. participates in supplying, licensing, or authorizing the PS5 system software used in those recovery and reinstallation operations.

47. Authorized PS5 operation depends on system software licensed by SIE Inc., while domestic hardware commercialization involves SIE LLC. Plaintiff seeks to establish each Defendant's own qualifying domestic acts and legally attributable conduct.

## REPRESENTATIVE MAPPING OF '637 PATENT — CLAIM 1

48. Plaintiff alleges that at least Claim 1 of the '637 Patent is infringed. The following allegations provide representative factual notice and do not limit the infringement contentions to be served under the Court's Local Supplemental Patent Rules.

49. Residential mini-cloud host / backend cloud: the accused PS5 is a residential host connected over broadband to Sony PSN/backend services.

50. Hypervisor and virtual machine: independent PS5 technical evidence identifies Sony's hypervisor/VMM, guest/GameOS environment, vCPU/VMCB control structures, nested-page-table/SLAT mechanisms, hypercalls/VMMCALL behavior, and VM exits. Plaintiff alleges that these facts establish the qualifying PS5 hypervisor-managed virtual-machine boundary for Claim 1.

51. **Thin-terminal and port-extension functionality:** PlayStation Remote Play and compatible PlayStation Portal devices extend display, audio, user-input, and control functionality from the residential PS5 host to a separate client terminal. Plaintiff alleges, upon information and belief, that these operations implement the functional and relational limitations of the asserted claims of the ’637 Patent, including the claimed port-extension architecture. The specification of the ’637 Patent expressly describes a thin game-console terminal connected to a remotely executing game environment. In describing FIG. 14, the specification states that “all the graphics from the remote game environment would be captured, encoded, and compressed as appropriate and send it over to client running on game terminal.” (’637 Patent, col. 8, FIG. 14 discussion.) The specification further discloses hardware-assisted H.264 encoding and client-side decoding. Plaintiff alleges, on information and belief, that Sony's accused implementations practice the claimed thin-terminal and port-extension limitations of the ’637 Patent.

52. **First-tier connectivity:** The accused PS5 architecture supports direct local audiovisual connectivity between the residential PS5 host and an HDMI-connected television. The ’637 Patent specification identifies a television as a supported thin-terminal embodiment, and Claim 1 permits local thin-terminal connectivity through a fast network link or direct cable connection. Plaintiff alleges that qualifying PS5 and television configurations implement the claimed first-tier relationship by extending audiovisual functionality from the residential execution environment to a directly connected terminal, subject to satisfaction of the claim's remaining thin-terminal and port-extension limitations.

53. **Additional first-tier implementations:** Sony's PlayStation VR (PS VR) and PlayStation VR2 (PS VR2) provide additional examples of local, interactive peripheral interfaces within the accused PlayStation platform. The original PS VR uses HDMI and USB connections through an external processor unit, together with motion sensing and camera-based tracking. PS VR2 connects directly to PS5 through USB Type-C and supports bidirectional interaction involving

rendered audiovisual output, eye tracking, motion tracking, and headset feedback. These implementations provide additional technical evidence potentially relevant to the asserted first-tier interface limitations, subject to claim construction and further technical investigation.

54. **Second-tier connectivity:** The accused PS5 architecture supports extension of display, audio, and controller functionality to PlayStation Portal and Remote Play client devices over local Wi-Fi networks and remote wide-area networks (“WANs”). These communication pathways operate alongside the PS5’s direct cable connections and its communications with Sony’s backend cloud services. Plaintiff alleges that qualifying implementations provide the claimed two-tier architecture of Claim 1 of the ’637 Patent, including local thin-terminal connectivity and remote connectivity to backend cloud services through the residential mini-cloud system over a slower network link.

Plaintiff further alleges that the accused PS5 architecture implements distinct but functionally coordinated communication paths. The residential PS5 extends audiovisual output and user-control functionality to PlayStation Portal and other supported Remote Play terminals through the accused port extension protocol. Separately, the residential PS5 exchanges account, authentication, subscription, entitlement, configuration, and session-related information with Sony's backend PlayStation Network infrastructure over Internet connectivity. Plaintiff alleges that these communications collectively implement the claimed residential mini-cloud architecture, including its terminal-access and backend-cloud relationships, without requiring the backend service itself to execute the game or requiring backend signaling to be encapsulated within the audiovisual stream.

55. Sony's published Remote Play documentation expressly identifies functional restrictions applicable to network-based remote access, including restrictions involving PS VR and PS VR2 games, camera-dependent and other peripheral-dependent games, Blu-ray and DVD playback, media services, and Share Play. Sony also documents separate power-management requirements

for Remote Play, including network-based activation from Rest Mode. Additionally, Sony documents Remote Play connection-status notifications, a configurable "Hide Remote Play Connection Status Pop-Up" setting, and a Connection History function identifying devices previously connected to the PS5 through Remote Play. These documented features demonstrate that the PS5 maintains and exposes information concerning remote terminal connections and applies functional restrictions to remote access. They provide corroborating evidence consistent with Plaintiff's proposed first-tier and second-tier architectural mapping, although these features do not independently establish the asserted claim limitations.

56. **Subscription:** PlayStation Plus and PSN provide subscription/account functionality through which users obtain authorized access to services and content on the residential host. Plaintiff alleges that the recited sign-on language describes operation/functionality of the claimed subscription system.

57. **Creation and provisioning:** Upon information and belief, Sony creates and provisions the PS5's virtualized execution environment through factory system-software deployment, boot-time initialization, and subsequent system configuration. Independent PS5 technical evidence identifies hypervisor-controlled virtualization mechanisms, including virtual-CPU state, virtual machine control blocks (VMCBs), and nested page tables. Sony's official Safe Mode documentation distinguishes Option 7, "Reset PS5," from Option 8, "Reset PS5 (Reinstall System Software)," which removes PS5 system software and requires a separately downloaded, Sony-provided PS5UPDATE.PUP reinstallation package. Sony prescribes and controls this installation pathway, which does not provide users an option to install an arbitrary operating-system image. Option 8 thus reconstructs the system-software environment from a Sony-supplied installation source. Plaintiff alleges, on information and belief, that subsequent hypervisor initialization establishes or reestablishes the virtualized GameOS execution environment and, together with Sony's associated

configuration processes, satisfies the virtual-machine creation and provisioning limitations of Claim 1 of the ’637 Patent.

58. **Provisioning and configuration:** after creation/reconstruction, Sony-designed software makes the environment operative on the particular host and Sony services thereafter apply configuration appropriate to the PS5/GameOS environment. Plaintiff alleges multiple non-exclusive provisioning/configuration paths, including host-resource adaptation, console-specific security/persistent-state context, PS5/version-specific servicing, first PSN sign-in, Console Sharing and Offline Play, entitlement/licensing, content update, Remote Play registration, cloud-save recovery, and migration. Plaintiff does not allege that generic account configuration alone satisfies the more specific claim relationship “according to the provisioned virtual machine.”

59. **Terminal connection to provisioned VM:** after the environment is operative and authorized, Remote Play/Portal connects the separate terminal to the residential host execution environment and allows interaction with the running application.

60. The precise internal division between Sony backend components, console framework components, hypervisor/VMM components, and guest components is not fully externally observable. Plaintiff’s pre-filing investigation identifies the observable lifecycle and architecture; discovery is expected to confirm the implementation details principally within Sony’s possession.

## ASSERTED DEPENDENT CLAIMS AND REPRESENTATIVE MAPPING

61. Plaintiff additionally asserts the dependent claims identified below. Each dependent claim incorporates the limitations of its respective parent claim. The following allegations identify representative accused products, features, and configurations supporting the additional limitations.

## Asserted Dependent Claims of the ’637 Patent

62. **Claim 2 (Extension Card Supporting DVD-Player Functionality):** Certain accused PS5 configurations incorporate an optical disc-drive assembly that supports DVD-player functionality and includes a dedicated controller circuit board electrically interfaced with the console's main motherboard. Publicly available teardown and repair evidence identifies such drive-controller daughterboards and associated Sony/SIE controller circuitry. Plaintiff alleges, on information and belief, that the identified optical-drive controller-board arrangement implements the claimed extension-card functionality, subject to the construction of “extension card,” the board's actual electrical and functional relationship to the residential host, and satisfaction of all limitations of Claim 1.

63. **Claim 6 (wireless thin-terminal connection):** PlayStation Portal and supported mobile and portable devices running Sony's Remote Play application communicate wirelessly with the residential PS5 through supported network connections. Plaintiff alleges that these implementations satisfy the additional wireless-connection limitation of Claim 6 of the ’637 Patent, subject to satisfaction of all limitations of Claim 1.

64. **Claim 8 (thin-terminal ports):** PlayStation Portal includes a 3.5 mm audio jack and a USB-C port, corresponding to the audio-port and USB-port alternatives recited in Claim 8 of the ’637 Patent. Plaintiff alleges that PlayStation Portal, when operating as a thin terminal in the accused PS5 system, satisfies the additional port limitation of Claim 8, subject to satisfaction of all limitations of Claim 1.

65. **Claim 9 (remote mini-cloud interconnection):** The accused PlayStation ecosystem enables geographically separated PS5 systems to communicate with one another through network connections, including peer-to-peer communications and server-mediated multiplayer gaming. Plaintiff alleges that such PS5-to-PS5 communications, whether direct or facilitated through

intermediary network infrastructure, satisfy the additional remote mini-cloud interconnection limitation of Claim 9 of the ’637 Patent, subject to satisfaction of all limitations of Claim 1.

66. **Claim 11 (subscription-managed thin-terminal connection):** Sony's Remote Play system uses PlayStation account-based console discovery and user-managed configuration to connect PlayStation Portal and other supported terminals to games executing in the PS5's virtualized environment through the accused port extension protocol. Plaintiff alleges that this functionality satisfies the additional limitation of Claim 11 of the ’637 Patent, subject to satisfaction of Claim 1.

67. **Claim 12 (Subscription Deployment and Lifecycle Management):** Sony's PlayStation Plus system deploys subscription-based digital-content packages, including downloadable games, to residential PS5 consoles. Sony's subscription and content-management mechanisms support application updating, entitlement verification, and enforcement of subscription expiration. When an applicable subscription entitlement expires without another valid license, PS5 system software marks the affected application with a padlock icon and prevents its authorized execution, thereby withdrawing the application from the set of content available for use while retaining its installed package. The PS5 also maintains application-usage information and provides an integrated storage-management interface through which users can select and delete installed packages. Plaintiff alleges, on information and belief, that the subscription-entitlement status and storage-management functionality operate as coordinated aspects of the PS5 content lifecycle, enabling users to identify expired subscription content and remove the corresponding installed packages, with the occupied storage reclaimed by the system. Plaintiff alleges that these coordinated subscription-entitlement, application-updating, usage-based storage-management, and package-removal operations implement the lifecycle-management functionality recited in Claim 12 of the ’637 Patent, literally or, alternatively, under the doctrine of equivalents, subject to satisfaction of all limitations of Claim 1.

68. **Application-Level Content Lifecycle Management:** Sony's PlayStation ecosystem further includes application-level content-management implementations, including Bungie's Destiny 2, that coordinate remotely managed content availability, application updates, and removal of obsolete or retired game assets. Bungie's published technical materials describe the Destiny Content Vault and installation-update mechanisms that remove superseded or retired content from active game builds and reduce installation size. Plaintiff identifies these mechanisms as evidence of subscription-related and time-limited digital-content lifecycle management within Sony's gaming ecosystem. Whether particular implementations remove locally deployed content packages in response to individual subscription expiration, and whether those implementations satisfy the specific limitations of Claim 12, require further technical investigation.

69. **Claim 14 (VM remote protocol):** Sony's Remote Play protocol enables PlayStation Portal and other supported thin terminals to remotely access and control games executing in the residential PS5's accused GameOS virtual machine, including from outside the home. Plaintiff alleges that this functionality satisfies the additional remote-protocol limitation of Claim 14 of the ’637 Patent, subject to satisfaction of Claim 1.

70. **Claim 15 (thin-terminal device):** Sony's PlayStation Portal is a purpose-built thin terminal that relies on the residential PS5 for game execution rather than functioning as an independent gaming computer. Portal lacks a conventional HDD and provides a display, user-input controls, and built-in wireless connectivity to access and control games executing in the accused PS5 virtual machine. Plaintiff alleges that these features satisfy the additional thin-terminal limitations of Claim 15 of the ’637 Patent, subject to satisfaction of Claim 1.

71. **Claim 19 (slower-link cloud exchange):** Sony's Remote Play system supports away-from-home connections over broadband and mobile networks, using PlayStation Network services for account authentication, console discovery, and session establishment. Sony's documented manual pairing procedure further establishes that the residential PS5 host generates a numeric registration

code, which is entered into the Remote Play client and used to establish an authorized host-client relationship. This pairing procedure constitutes a concrete implementation of coordinated connection establishment between the residential host and remote terminal. Plaintiff alleges, on information and belief, that these registration, authentication, discovery, and session-establishment mechanisms, together with the accused port extension protocol and communications with Sony's backend cloud infrastructure, satisfy the additional slower-link information-exchange limitation of Claim 19 of the ’637 Patent, subject to satisfaction of all limitations of Claim 1.

## REPRESENTATIVE MAPPING OF ’118 PATENT — CLAIM 1

72. Plaintiff alleges that at least Claim 1 of the ’118 Patent is infringed. The accused architecture satisfies the inherited residential-host, backend-cloud, hypervisor/VM, terminal, two-tier access, subscription, provisioning, configuration, and terminal-connection limitations for the reasons alleged above.

73. The ’118 Patent additionally requires at least one emulator running in the claimed virtual machine. Plaintiff identifies Sony’s PS5-specific PS2-emulation implementation and Sly Cooper and the Thievius Raccoonus as a concrete locally executed PS2 title. Public technical materials and observable emulator-wrapper features—including rewind and quick-save/save-state functionality—provide a specific factual basis for the emulator limitation.

74. Public evidence separately identifies the hypervisor-managed GameOS/guest environment. Combining those independent proof tracks, Plaintiff alleges that the accused PS2 emulator operates within the qualifying GameOS VM. This is the required emulator-in-VM relationship; it does not require nested virtualization, a second virtual machine, or a second hypervisor. Direct process/loader placement is expected to be confirmed through discovery.

## REPRESENTATIVE MAPPING OF ’118 PATENT CLAIM 17 — BUILD / PROVISION METHOD

75. Plaintiff alleges that Claim 17 is infringed through Sony’s create/provision/configure lifecycle. The primary theory includes Sony-controlled factory establishment and first-boot/activation of the PS5 virtualized environment. Sony’s full-reinstallation pathway provides a public reconstruction example showing the Sony-designed sequence after the prior operative environment is removed. Independent PS5 technical evidence further identifies boot-time hypervisor initialization and nested-page-table/virtual-processor state. Plaintiff alleges that Sony creates and provisions the qualifying virtualized environment and that provider-side framework functionality configures the residential host according to that provisioned environment before or during the continuing subscription/terminal lifecycle. Discovery will identify the precise factory artifacts, framework components, update/configuration objects, and causal relationship to the provisioned VM.

## REPRESENTATIVE MAPPING OF ’118 PATENT CLAIM 19 — FRAMEWORK-CLIENT/SERVER CONFIGURATION METHOD

76. Plaintiff alleges that Claim 19 is separately infringed through a Sony-controlled framework-client/server configuration path. A representative public embodiment occurs when a new or reinstalled PS5 communicates with Sony services and an existing user signs into PSN: Sony’s public materials describe subscription continuity, account/user-data transfer, cloud-save recovery, entitlements, updates, and related state being applied or synchronized to the destination console. Plaintiff alleges on information and belief that Sony console-side framework/client components communicate with provider-side framework/server components to configure both the mini-cloud host and subscription system as Claim 19 requires. Discovery will identify the client and server components, APIs/messages, configuration objects, recipients, and resulting host/subscription state.

## REPRESENTATIVE MAPPING OF ’118 PATENT CLAIMS 18 AND 20 — EMULATOR-ADDED METHOD PATHS

77. Claim 18 depends from Claim 17 and adds the issued emulator limitation; Claim 20 depends from Claim 19 and adds the issued emulator limitation. Plaintiff incorporates the respective Claim 17 and Claim 19 method allegations and further alleges, for the reasons stated in the Claim 1 mapping above, that at least one accused Sony legacy-game emulator operates in the qualifying virtual-machine environment. Plaintiff does not allege that the dependent claims are independent of their parent claims or that they require nested virtualization or a second VM.

### Asserted Dependent Claims of the ’118 Patent

78. **Claims 2 and 3 (non-native instruction and device-specific emulation):** Sony's PS5-specific PlayStation 2 emulation technology enables execution of legacy PS2 games, including *Sly Cooper and the Thievius Raccoonus*, originally developed for PS2 hardware. Plaintiff alleges that the accused emulator executes non-native PS2 program instructions and reproduces a device-specific PS2 execution environment within the accused PS5 virtual machine, satisfying the additional limitations of Claims 2 and 3 of the ’118 Patent, subject to satisfaction of Claim 1.

79. **Claim 9 (wireless terminal):** Sony's PlayStation Portal and supported mobile Remote Play clients use wireless network connections to access and control games executing in the accused PS5 virtualized environment. Plaintiff alleges that these implementations satisfy the additional wireless-terminal limitation of Claim 9 of the ’118 Patent, subject to satisfaction of Claim 1.

80. **Claim 11 (thin-terminal ports):** PlayStation Portal includes a 3.5 mm audio jack and a USB-C port, corresponding to the audio-port and USB-port alternatives recited in Claim 11 of the ’118 Patent. Plaintiff alleges that PlayStation Portal, when operating as a thin terminal in the accused PS5 system, satisfies the additional port limitation of Claim 11, subject to satisfaction of all limitations of Claim 1.

81. **Claim 12 (Subscription Deployment and Lifecycle Management):** Plaintiff incorporates the factual allegations concerning subscription deployment and lifecycle management set forth in the preceding mapping of Claim 12 of the ’637 Patent and alleges that the same accused mechanisms satisfy the additional limitations of Claim 12 of the ’118 Patent, literally or, alternatively, under the doctrine of equivalents, subject to satisfaction of all limitations of Claim 1 of the ’118 Patent.

82. **Claim 13 (VM remote protocol):** Sony's Remote Play system enables PlayStation Portal and other supported terminals to remotely access and control games executing in the accused PS5 virtualized environment, including from outside the home. Plaintiff alleges that this functionality satisfies the additional remote-protocol limitation of Claim 13 of the ’118 Patent, subject to satisfaction of Claim 1.

83. **Claim 15 (slower-link provider exchange):** Plaintiff incorporates the factual allegations concerning slower-link provider exchange set forth in the preceding mapping of Claim 19 of the ’637 Patent and alleges that the same accused mechanisms satisfy the additional limitations of Claim 15 of the ’118 Patent, subject to satisfaction of all limitations of Claim 1 of the ’118 Patent.

84. **Claims 18 and 20 (emulator-added methods):** Claim 18 depends from Claim 17, and Claim 20 depends from Claim 19. Plaintiff alleges that the accused method implementations add an emulator running in the claimed virtual machine, as described in the respective method and emulator mappings above. All limitations of the corresponding parent claims remain incorporated.

## ALTERNATIVE INFRINGEMENT THEORIES

85. Plaintiff pleads the following infringement theories in the alternative to the extent supported by the claim language, the accused functionality, and the evidence. These theories do not relax the requirement to prove every limitation of each asserted claim, and no theory is intended to convert a method claim into a system claim or to eliminate any all-steps requirement.

86. Literal direct infringement under 35 U.S.C. § 271(a). For the asserted system claims, Plaintiff alleges that Sony directly infringes through making, using, importing, selling, offering to sell, testing, configuring, deploying, and/or operating the accused combinations in the United States. For the asserted method claims, Plaintiff alleges direct infringement where Sony itself performs, tests, demonstrates, or operates the complete claimed method in the United States.

87. Direct infringement through attributable performance under § 271(a). In the alternative for Claims 17, 18, 19, and 20, Plaintiff alleges that user-performed steps are attributable to Sony to the extent Sony conditions participation in or receipt of PlayStation functionality, subscription benefits, activation, reinstallation, content access, Remote Play, or related services on performance of Sony-prescribed steps and establishes the manner or timing of those steps, or otherwise satisfies the governing standards for direction, control, attribution, or joint enterprise. Sony supplies and controls the relevant system software, prescribed installation/reinstallation procedures, PSN/PlayStation Plus infrastructure, entitlement and licensing rules, Remote Play software and services, and provider-side configuration framework. Plaintiff will prove attribution only to the extent the evidence satisfies the governing all-steps standard. In particular, Plaintiff alleges that SIE Inc.'s software-license restrictions and the prescribed PS5 recovery workflow provide evidence relevant to whether SIE Inc. conditions authorized restoration on performance of specified steps and establishes their manner or timing. Plaintiff does not contend that software ownership or control alone proves attribution or completion of every method limitation.

88. Induced infringement under 35 U.S.C. § 271(b). Plaintiff does not rely on a pre-suit demand letter as the source of Sony's knowledge for this file-first Complaint. From and after service of this Complaint, however, Sony will have actual notice of the Asserted Patents and the claim-specific infringement theories pleaded herein. To the extent Sony thereafter continues affirmative acts that knowingly encourage users, developers, distributors, service personnel, or other direct infringers to perform the accused combinations or method steps—including through Sony-supplied system

software, mandatory or prescribed installation/reinstallation procedures, account/subscription workflows, Remote Play setup and use instructions, software/services, marketing, technical support, or other affirmative directions—Plaintiff alleges induced infringement under § 271(b), provided an underlying direct infringement and the required knowledge and intent are established. Plaintiff does not rely on mere silence, omission, continued product availability, or passive inaction alone as inducement. As to SIE Inc., the affirmative conduct alleged includes its role, if proven, in authorizing or supplying the system-software recovery materials and prescribed instructions used by U.S. PS5 owners; contractual control alone does not replace proof of knowledge, specific intent, and direct infringement.

89. Contributory infringement under 35 U.S.C. § 271(c). Plaintiff alleges contributory infringement only as to specifically identified Sony-supplied components, software, firmware, or services for which the evidence establishes that the item constitutes a material part of the patented invention, Sony knew the item was especially made or especially adapted for use in an infringement, and the item is not a staple article or commodity of commerce suitable for substantial noninfringing use. Plaintiff does not allege that the PlayStation console as a whole is non-staple merely because it is capable of the accused functionality.

90. Doctrine of equivalents. For any asserted limitation not proven literally, Plaintiff alternatively alleges infringement under the doctrine of equivalents where the accused element or operation performs substantially the same function in substantially the same way to achieve substantially the same result, or is otherwise equivalent under governing law, on a limitation-by-limitation basis. Plaintiff does not use the doctrine of equivalents to eliminate or vitiate a claim limitation, and any equivalents theory remains subject to prosecution-history estoppel, dedication, claim scope, and other applicable legal limitations. This alternative is particularly preserved for protocol, component, and implementation details where Sony uses proprietary terminology or implementation choices rather than the terminology appearing in the issued claims.

91. Statutory theories not presently pleaded. Plaintiff does not presently assert liability under 35 U.S.C. § 271(f) or § 271(g) because the current pre-filing record does not establish the export-for-foreign-combination or product-made-by-patented-process facts those provisions require. Plaintiff reserves only such rights to amend or supplement as the Federal Rules, Local Rules, Patent Rules, scheduling orders, and Rule 11 permit if later-developed facts supply a good-faith basis.

## SONY’S PRE-SUIT EXPOSURE TO THE KHALID PATENT FAMILY

92. Sony's pre-suit exposure to the Khalid disclosure is documented. During prosecution of Sony Computer Entertainment's U.S. Patent Application No. 14/598,761, the USPTO transmitted to Sony's patent prosecution counsel a June 6, 2019 Office Action expressly identifying Khalid, U.S. Patent Application Publication No. 2012/0311564, as prior art considered pertinent to Sony's disclosure. US2012/0311564 is the published application that matured into the ’637 Patent, which had issued on July 15, 2014.

93. The Khalid disclosure is technologically relevant to Sony's PlayStation business and expressly identifies Sony PlayStation in its “Game Console Over PEP” embodiment. Separately, during the relevant period, Sony Interactive Entertainment maintained intellectual-property and trademark-enforcement activities concerning the PLAYSTATION marks referenced in the Khalid patent disclosures.

94. The 2019 Office Action identifies Khalid as prior art made of record rather than as a reference relied upon in the examiner's § 103 rejection. Plaintiff therefore does not allege that the Office Action alone establishes Sony's actual knowledge of the issued ’637 Patent or deliberate infringement. It does, however, provide contemporaneous documentary evidence that the USPTO placed the Khalid Mini-Cloud disclosure before Sony's patent prosecution counsel years before this action.

95. Plaintiff alleges on information and belief that the timing, extent, and internal communication of Sony's knowledge and consideration of the Khalid disclosure, the corresponding issued ’637 Patent, and the accused PlayStation technologies are matters appropriate for discovery. Plaintiff reserves the right, consistent with the Federal Rules and evidence developed in discovery, to establish that Sony's infringement was deliberate or intentional and to seek enhanced damages under 35 U.S.C. § 284.

## COUNT I — INFRINGEMENT OF U.S. PATENT NO. 8,782,637 — CLAIM 1 AND ASSERTED DEPENDENT CLAIMS

96. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

97. The ’637 Patent is presumed valid under 35 U.S.C. § 282.

98. Sony has directly infringed and continues to directly infringe Claim 1 of the ’637 Patent under 35 U.S.C. § 271(a) through acts including making, using, importing, selling, offering to sell, testing, configuring, and/or operating Accused PlayStation Systems in the United States in the accused combination, to the extent attributable to each Defendant.

99. Sony’s own U.S. testing, demonstration, operation, configuration, servicing, and use of accused console/network/Remote Play combinations provide an independent direct-use theory. Plaintiff will prove the specific acts attributable to each Defendant through discovery.

100. Plaintiff incorporates the common allegations of direct infringement, post-service inducement, contributory infringement where supported, and the doctrine of equivalents, subject to the applicable statutory requirements and proof for this asserted claim.

101. Plaintiff seeks damages under 35 U.S.C. § 284 for proven infringement of this claim, subject to applicable statutory limitations and without duplicative recovery.

102. Plaintiff additionally alleges infringement of dependent Claims 2, 6, 8, 9, 11, 12, 14, 15, and 19 of the ’637 Patent, each subject to all limitations of Claim 1 and its own additional limitations, as mapped above.

## COUNT II — INFRINGEMENT OF U.S. PATENT NO. 10,846,118 — CLAIM 1 AND ASSERTED DEPENDENT CLAIMS

103. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

104. Sony has directly infringed and continues to directly infringe Claim 1 of the ’118 Patent under 35 U.S.C. § 271(a) through acts including making, using, importing, selling, offering to sell, testing, configuring, and/or operating Accused PlayStation Systems that combine the residential-host architecture alleged above with qualifying Sony legacy-game emulation functionality, to the extent attributable to each Defendant.

105. Sony’s own U.S. testing, deployment, operation, configuration, servicing, and use of legacy-title execution on accused PlayStation systems provide an independent direct-use theory. Plaintiff alleges emulator-in-VM and does not require nested virtualization or a second VM.

106. Plaintiff incorporates the common allegations of direct infringement, post-service inducement, contributory infringement where supported, and the doctrine of equivalents, subject to the applicable statutory requirements and proof for this asserted claim.

107. Plaintiff seeks damages under 35 U.S.C. § 284 for proven infringement of this claim, subject to applicable statutory limitations and without duplicative recovery.

## COUNT III — INFRINGEMENT OF U.S. PATENT NO. 10,846,118 — CLAIM 17 (BUILD / PROVISION METHOD)

108. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

109. The ’118 Patent is presumed valid under 35 U.S.C. § 282.

110. Sony has directly infringed and continues to directly infringe Claim 17 under 35 U.S.C. § 271(a) where Sony itself performs, tests, demonstrates, or operates the complete claimed method in the United States. In the alternative, Plaintiff alleges Sony-controlled or attributable performance of user-facing steps under the direction/control, conditioned-benefit, manner-or-timing, joint-enterprise, or other attribution standards recognized by governing law, but only to the extent the evidence establishes that all steps are performed by or attributable to a legally responsible actor.

111. The accused method includes the factory/initial provisioning path and, as an additional validation path, Sony's prescribed reinstallation/reconstruction lifecycle. Plaintiff does not limit Claim 17 infringement to users who replaced storage or reinstalled system software.

112. Plaintiff incorporates the common allegations of direct infringement, post-service inducement, contributory infringement where supported, and the doctrine of equivalents, subject to the applicable statutory requirements and proof for this asserted claim.

113. Plaintiff seeks damages under 35 U.S.C. § 284 for proven infringement of this claim, subject to applicable statutory limitations and without duplicative recovery.

## COUNT IV — INFRINGEMENT OF U.S. PATENT NO. 10,846,118 — CLAIM 18 (CLAIM 17 + EMULATOR)

114. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

115. Claim 18 depends from Claim 17 and adds the issued emulator limitation. Sony has directly infringed and continues to directly infringe Claim 18 under 35 U.S.C. § 271(a) where Sony itself performs, tests, demonstrates, or operates the complete Claim 17 method with the additional emulator limitation in the United States. In the alternative, Plaintiff alleges attributable performance of user-facing steps under the same direction/control and attribution theories pleaded

for Claim 17, but only to the extent all limitations and the governing all-steps standard are satisfied.

116. Plaintiff incorporates the Claim 17 build/provision allegations and further alleges that at least one accused Sony emulator operates within the qualifying virtual-machine environment as alleged above.

117. Plaintiff incorporates the common allegations of direct infringement, post-service inducement, contributory infringement where supported, and the doctrine of equivalents, subject to the applicable statutory requirements and proof for this asserted claim.

118. Plaintiff seeks damages under 35 U.S.C. § 284 for proven infringement of this claim, subject to applicable statutory limitations and without duplicative recovery.

## COUNT V — INFRINGEMENT OF U.S. PATENT NO. 10,846,118 — CLAIM 19 (FRAMEWORK-CLIENT/SERVER METHOD)

119. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

120. Sony has directly infringed and continues to directly infringe Claim 19 under 35 U.S.C. § 271(a) where Sony itself performs, tests, demonstrates, or operates the complete claimed method in the United States. In the alternative, Plaintiff alleges Sony-controlled or attributable performance of user-facing steps under the direction/control, conditioned-benefit, manner-or-timing, joint-enterprise, or other attribution standards recognized by governing law, but only to the extent the evidence establishes that all steps are performed by or attributable to a legally responsible actor.

121. The accused Claim 19 path is distinct from Claim 17 and includes the alleged framework-client communication with Sony provider-side framework services to configure the residential host and subscription system. Plaintiff relies on Sony's ongoing provider-serviced configuration lifecycle only insofar as it satisfies the actual issued limitations.

122. Plaintiff incorporates the common allegations of direct infringement, post-service inducement, contributory infringement where supported, and the doctrine of equivalents, subject to the applicable statutory requirements and proof for this asserted claim.

123. Plaintiff seeks damages under 35 U.S.C. § 284 for proven infringement of this claim, subject to applicable statutory limitations and without duplicative recovery.

## COUNT VI — INFRINGEMENT OF U.S. PATENT NO. 10,846,118 — CLAIM 20 (CLAIM 19 + EMULATOR)

124. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

125. Claim 20 depends from Claim 19 and adds the issued emulator limitation. Sony has directly infringed and continues to directly infringe Claim 20 under 35 U.S.C. § 271(a) where Sony itself performs, tests, demonstrates, or operates the complete Claim 19 method with the additional emulator limitation in the United States. In the alternative, Plaintiff alleges attributable performance of user-facing steps under the same direction/control and attribution theories pleaded for Claim 19, but only to the extent all limitations and the governing all-steps standard are satisfied.

126. Plaintiff incorporates the Claim 19 framework-client/server configuration allegations and further alleges that at least one accused Sony emulator operates within the qualifying virtual-machine environment as alleged above.

127. Plaintiff incorporates the common allegations of direct infringement, post-service inducement, contributory infringement where supported, and the doctrine of equivalents, subject to the applicable statutory requirements and proof for this asserted claim.

128. Plaintiff seeks damages under 35 U.S.C. § 284 for proven infringement of this claim, subject to applicable statutory limitations and without duplicative recovery.

## NOTICE, DAMAGES, AND RESERVATION OF RIGHTS

129. This is a file-first Complaint. Plaintiff does not rely on a pre-suit demand letter as notice. The 2019 USPTO prosecution record shows exposure to a related Khalid publication, not necessarily actual knowledge of the issued patents. Service of this Complaint will provide notice of the asserted patents and infringement theories; any post-service inducement must independently satisfy the statutory elements.

130. Plaintiff seeks damages for the legally recoverable period under 35 U.S.C. § 286, subject to 35 U.S.C. § 287, ownership of accrued causes of action, and all other applicable damages rules. This Complaint does not presently seek provisional-rights damages under 35 U.S.C. § 154(d) because pre-issuance actual notice of the published ’118 application has not yet been established on the current public record.

131. Plaintiff seeks prejudgment and post-judgment interest and costs as permitted by law.

132. Plaintiff alleges the pre-suit knowledge and exposure circumstances described above and reserves the right to establish through discovery that Sony's infringement was deliberate or intentional. Plaintiff seeks enhanced damages under 35 U.S.C. § 284 only to the extent supported by the evidence and applicable law. Post-service inducement allegations under § 271(b) remain distinct from willfulness and enhanced damages.

133. Plaintiff seeks relief against each Defendant only for its own acts or conduct legally attributable to it. Plaintiff will distinguish SIE Inc.’s software-related conduct from SIE LLC’s United States distribution and service activities, without treating affiliation or revenue receipt alone as liability.

134. Damages will be tied to proven infringement and the value attributable to patented functionality, not automatically to all PSN subscriptions, game sales, content purchases, or other PlayStation revenue.

135. Plaintiff seeks compensation under 35 U.S.C. § 284, including a reasonable royalty where appropriate, based on a supported royalty base, apportionment, and relevant hardware, software, service, and usage evidence. Gross platform revenue is not presumed to be the royalty base.

136. Plaintiff seeks no duplicative recovery for the same infringement or injury and preserves legally available relief for independently established conduct of each Defendant.

137. Plaintiff asserts six claims forming the bases of the six infringement counts: ’637 Claim 1 and ’118 Claims 1, 17, 18, 19, and 20. Plaintiff also asserts ’637 dependent Claims 2, 6, 8, 9, 11, 12, 14, 15, and 19 and ’118 dependent Claims 2, 3, 9, 11, 12, 13, and 15, as expressly mapped above. Claims 18 and 20 retain their respective dependencies on Claims 17 and 19.

## PRAYER FOR RELIEF

138. WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a. That Defendants have infringed Claim 1 and dependent Claims 2, 6, 8, 9, 11, 12, 14, 15, and 19 of U.S. Patent No. 8,782,637, as alleged;

b. That Defendants have directly and/or indirectly infringed, literally and/or under the doctrine of equivalents where applicable, Claim 17 of the ’118 Patent;

c. That Defendants have directly and/or indirectly infringed, literally and/or under the doctrine of equivalents where applicable, Claim 19 of the ’118 Patent;

d. That Defendants have infringed Claim 1 and dependent Claims 2, 3, 9, 11, 12, 13, and 15 of U.S. Patent No. 10,846,118, as alleged;

e. That Defendants have directly and/or indirectly infringed, literally and/or under the doctrine of equivalents where applicable, Claim 18 of the ’118 Patent;

f. That Defendants have directly and/or indirectly infringed, literally and/or under the doctrine of equivalents where applicable, Claim 20 of the ’118 Patent;

g. That Plaintiff recover damages adequate to compensate for legally recoverable infringement, in no event less than a reasonable royalty, under 35 U.S.C. § 284;

h. That Plaintiff recover prejudgment and post-judgment interest;

i. That Plaintiff recover costs as permitted by law;

j. If later supported by evidence and applicable law, such enhanced damages, attorney fees, equitable relief, or other relief as Plaintiff properly establishes; and

k. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 09, 2026

Respectfully submitted,



ATM Shafiqul Khalid, Plaintiff Pro Se
17446 NE 28th ST, Redmond, WA 98052
E: atmkhalid@gmail.com, P: 425-445-7157